CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 0 5 2013

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| HASAN BAYADI, | ) | Civil Action No.: 7:12-cv-436 |
| | ) | |
| Plaintiff, | ) | **Memorandum Opinion** |
| v. | ) | |
| | ) | Hon. James C. Turk |
| RANDALL C. MATHENA, et al., | ) | Senior United States District Judge |
| | ) | |
| Defendants. | ) | |
| | ) | |

Hasan Bayadi, a Virginia prisoner proceeding pro se, filed this civil rights action alleging that Defendants Mathena and Hinkle violated his rights under the Fourteenth Amendment (brought under 42 U.S.C. § 1983) and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). 42 U.S.C. §§ 2000cc et seq. Bayadi, an "Orthodox White Sunni Muslim," alleges that the "Shari'ah Laws of Islam" require that he not shave his beard. ECF No. 1 at 3. Virginia Department of Corrections ("VDOC") policy, however, only allows a one-fourth inch beard. Alternatively, if Bayadi wishes to grow his beard longer than that, he is housed in administrative segregation—with a greatly decreased scope of privileges—for failing to follow the policy. After one year in segregation, he becomes eligible for assignment to a special housing unit within VDOC ("the 864 Unit") where prisoners who disregard the grooming policy for religious reasons may retain the full scope of general population privileges. Defendants argue that this arrangement satisfies RLUIPA's strict scrutiny standard.

This matter is presently before the Court on Defendants' Motion for Summary Judgment. ECF No. 15. Bayadi filed a response, ECF No. 20, and the matter is now ripe for disposition. Concluding that Defendants have not made the requisite showing under RLUIPA, the Court

**DENIES WITHOUT PREJUDICE** the Defendants' Motion for Summary Judgment as to the RLUIPA claim, ECF No. 15, but **GRANTS** the Motion as to the Fourteenth Amendment claim.

I.   FACTS

In considering a motion for summary judgment, a court must consider the facts and draw all reasonable inferences in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); see also MLC Auto., LLC, v. Town of S. Pines, 532 F.3d 269, 273 (4th Cir. 2008).

Hasan Bayadi, formerly known as Ronald Arehart, is a Muslim. On or about February 24, 2012, Bayadi ceased shaving his beard for religious reasons. Staff at the Augusta Correctional Center ("ACC") gave him a direct order to shave his beard, which he refused to follow. At the time, VDOC Operating Procedure 864.1 ("OP 864.1") prohibited the growth of beards unless a prisoner received a medical exemption. See ECF No. 16-1 at 10. As a result of his refusal to shave, staff at ACC charged him with disobeying an order. On March 23, 2012, staff charged him again with refusing to shave and failing to abide by OP 864.1. Prison officials placed Bayadi in administrative segregation for his non-compliance, but allowed him to leave if he would shave his beard. Bayadi has not shaved his beard and has thus remained in segregation, albeit in three different correctional facilities: first ACC, then Wallens Ridge State Prison ("WRSP"), and currently Red Onion State Prison ("ROSP"). Defendant Mathena is the warden of ROSP and Defendant Hinkle is a VDOC Regional Director.

Bayadi faces a number of restrictions in segregation that a prisoner in general population does not. His response to the motion for summary judgment states that he must wear an orange jumpsuit, can shower only three times per week, and can spend only $13 per week at the commissary on non-food items. ECF No. 19 at 2. He also cannot participate in the Muslim

religious service on Fridays (Jumu'ah), cannot interact with other Muslim prisoners, and cannot work to earn money. Id. at 6. Prisoners are not precluded, however, from earning good conduct time "based solely on the refusal to comply with grooming standards." ECF No. 16-1 at 11.

On August 20, 2012, VDOC amended OP 864.1, allowing all prisoners to grow a beard up to one-fourth inch in length. See id. at 10. Presumably because Bayadi is not willing to trim his beard to one-fourth inch, he has remained in segregation since March 23, 2012. To manage prisoners like Bayadi, VDOC has established the 864 Unit at WRSP "to house inmates that are non-compliant with grooming standards based on their religion." ECF No. 16 at 2-3. Prisoners in the 864 Unit receive the same benefits and services as prisoners in the general population; Bayadi seeks a transfer to this unit.

It is not easy to obtain admission to the 864 Unit. "It has been the practice since the creation of the unit to require inmates to remain in segregation for one year after refusing to comply with grooming standards before being considered for assignment to this housing unit."[1] Id. (emphasis added). Bayadi is approaching his one-year anniversary in segregation, but his transfer is not assured even after he reaches this milestone. Defendants aver that "[i]f Bayadi chooses to be in non-compliance with the grooming policy for one year until March 23, 2013, and if he reflects good behavior while in segregation, then he may be eligible for a transfer to that housing unit if bed space is available." ECF No. 16 at 6 (emphasis added). Currently, there is no available bed space in the 864 Unit. Id. at 4.

Bayadi further alleges that the only difference between him and the prisoners currently housed in the 864 Unit is that he is white and they are African-American. Bayadi alleges that he

---

[1] This "practice" is not recorded in any statute, regulation, or written VDOC policy that has been presented to the Court.

and these prisoners do not shave for similar religious reasons, but Bayadi is not in the unit and they are.

## II. LEGAL STANDARD

Summary judgment is proper where "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when a rational factfinder, considering the evidence in the summary judgment record, could find in favor of the non-moving party. Ricci v. DeStefano, 557 U.S. 557, 586 (2009). Summary judgment should be entered if the Court finds, after a scrupulous review of the record, that no reasonable jury could return a verdict for the non-moving party. See Evans v. Tech. Applications & Serv. Co., 80 F.3d 954, 959 (4th Cir. 1996). The moving party bears the burden to establish either the absence of a genuine issue of material fact or the absence of evidence to support the non-moving party's case. MLC Auto., 532 F.3d at 281.

## III. ANALYSIS

Bayadi presents two claims in the complaint: one under the Equal Protection Clause of the Fourteenth Amendment, and another under RLUIPA.[2]

### A. Equal Protection Claim

Bayadi alleges both racial and religious discrimination—in violation of his Equal Protection rights—in his exclusion from the 864 Unit at WRSP because he is an "Orthodox White Sunni Muslim" while "African-American Muslims" are included. ECF No. 1 4.

---

[2] Bayadi references the First Amendment once in his Complaint, see ECF No. 1 at 5 ("Plaintiff is exercising his 'First Amendment right' to practice his religion of Islam by growing a beard."), but this reference lies in the middle of his discussion of the substantial burden on his religious exercise and VDOC's purported compelling state interests—elements of an RLUIPA claim but not of a First Amendment claim. Furthermore, elsewhere in the Complaint he alleges that prison officials violated RLUIPA in each of his three claims. Id. at 2. Therefore, the Court declines to construe the Complaint to assert a Free Exercise claim. Even if the Court were to construe the Complaint to raise a First Amendment claim, the Court would grant Defendants' motion on the claim because the Fourth Circuit has upheld a similar grooming policy against a First Amendment challenge. Hines v. S.C. Dep't. of Corr., 148 F.3d 353, 357 (4th Cir. 1998).

4

To succeed on this claim, Bayadi "'must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination.' If he makes this showing, 'the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny.'" Veney v. Wyche, 293 F.3d 726, 730-31 (4th Cir. 2002) (quoting Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001)). In a prison context, this level of scrutiny is "whether the disparate treatment is 'reasonably related to [any] legitimate penological interests.'" Veney, 293 F.3d at 732 (quoting Shaw v. Murphy, 532 U.S. 223, 225 (2001)).

All that supports Bayadi's Equal Protection claim is his unsupported assertion that VDOC officials are discriminating against him. He has offered no evidence, statistical or otherwise, to show that he is similarly situated to those prisoners already in the 864 Unit or that discrimination motivates his exclusion from the 864 Unit. These assertions are insufficient to avoid summary judgment. Bayadi must set forth "specific, non-conclusory factual allegations that establish improper motive." Williams v. Hansen, 326 F.3d 569, 584 (4th Cir. 2003); see also White v. Boyle, 538 F.2d 1077, 1079 (4th Cir. 1976) (conclusory allegations insufficient to avoid summary judgment). Because Bayadi has submitted nothing more than conclusory allegations, the Court grants the Defendants' Motion for Summary Judgment on his Equal Protection claim.

## B. RLUIPA Claim

Bayadi also alleges that prison officials' failure to accommodate his beard growth violates RLUIPA, which mandates strict scrutiny when prison officials impose substantial burdens on free exercise.[3] Because it is relevant to the issue of what damages are recoverable, congressional authority to enact RLUIPA derives from the Spending Clause and the Commerce

---

[3] The history and purposes of RLUIPA have been amply discussed elsewhere, see, e.g., Lovelace v. Lee, 472 F.3d 174, 185-86 (4th Cir. 2006), and the Court will not repeat the background here.

Clause, 42 U.S.C. § 2000cc-1(b), but commentary as to prisoner cases has focused far more on Congress's authority under the former provision than the latter. See, e.g., Madison v. Virginia, 474 F.3d 118, 123 (4th Cir. 2006) (discussing at length and upholding the Spending Clause basis for the constitutionality of RLUIPA and not addressing the Commerce Clause).

To state a prima facie case under RLUIPA, Bayadi must demonstrate that the challenged practice substantially burdens his exercise of religion. 42 U.S.C. § 2000cc-2(b). If he is successful, the burden of persuasion shifts to the government to prove that the burden on religious exercise is the least restrictive means of furthering a compelling state interest. 42 U.S.C. § 2000cc-1(a). While Congress mandated that RLUIPA be construed "in favor of broad protection of religious exercise," 42 U.S.C. § 2000cc-3(g), the Supreme Court has also determined that lawmakers intended courts to "apply RLUIPA's standards with due deference to the experience and expertise of prison and jail administrators." Cutter v. Wilkinson, 544 U.S. 709, 723 (2005).

Defendants have not contested that their actions place a substantial burden on Bayadi's religious exercise, nor could they. See Couch v. Jabe, 679 F.3d 197, 200 (4th Cir. 2012) (concluding in a very similar case that placing a prisoner in segregation for a religiously-motivated violation of VDOC's grooming policy constitutes a substantial burden under RLUIPA). There is no dispute about the religious motivation for Bayadi's actions and Defendants have not questioned Bayadi's sincerity. Therefore, the Court concludes that Bayadi has stated a prima facie case.

The burden of persuasion now shifts to the Defendants to show that both the revised OP 864.1 and the unwritten requirement that Bayadi spend one year in segregation before being eligible for placement in the 864 Unit are supported by a compelling state interest pursued by the

least restrictive means. In Couch, the Fourth Circuit recently concluded that pre-revision OP 864.1 satisfied the RLUIPA compelling state interest test because the proffered explanation "connected the Policy's restrictions to specific health and security concerns and showed that those concerns are furthered by the Policy." 679 F.3d at 202. The explanation given by the Defendants in the present case is largely identical to the pre-revision explanation provided to the Fourth Circuit in Couch, 679 F.3d at 202:

> The [2010] policy was implemented to facilitate the identification of offenders and to promote safety, security, sanitation and to establish uniform grooming standards for offenders incarcerated in Virginia Department of Corrections (VDOC) facilities. Hair styles and beards that could conceal contraband, promote identification with gangs, create a health, hygiene or sanitation hazard, or could significantly compromise the ability to identify an offender are not allowed.

ECF No. 16-1 ¶ 6. Defendants then mention, without explanation as to the effect on VDOC's compelling state interests, that VDOC revised OP 864.1 in August 2012 to allow offenders to grow a beard up to one-fourth inch in length. Id. at ¶ 7.

Defendants have not addressed how the revision of OP 864.1 affects the compelling nature of these identified state interests, if at all. The revision appears to affect some of these stated interests and not others. For example, a prohibition on longer beards like Bayadi's while allowing shorter beards still implicates the interests in contraband concealment and health and hygiene, at least to a limited extent. The revised policy, however, does not seem to address the problem of gang identification since gang members could permissibly grow a one-fourth inch beard in order to signal their gang membership. Furthermore, Defendants have not offered any justification for the one-year segregation period before a prisoner is eligible to enter the 864 Unit. These examples highlight the fact that Defendants have not taken the "unremarkable step

of providing an explanation for the policy's restrictions." Lovelace v. Lee, 472 F.3d 174, 190 (4th Cir. 2006).[4]

Defendants have also neglected to argue that "the Policy is the least restrictive means of furthering the compelling governmental interests that they identify." Couch, 679 F.3d at 202 (citing 42 U.S.C. § 2000cc-1(a)(2)). The Fourth Circuit acknowledged that "several circuits have held that the government, in the RLUIPA context, 'cannot meet its burden to prove least restrictive means unless it demonstrates that it has actually considered and rejected the efficacy of less restrictive measures before adopting the challenged practice.'" Id. at 203 (citing Warsoldier v. Woodford, 418 F.3d 989, 999 (9th Cir. 2005); Washington v. Klem, 497 F.3d 272, 284 (3d Cir. 2007); Spratt v. R.I. Dep't of Corr., 482 F.3d 33, 41 (1st Cir. 2007)). The Fourth Circuit called this requirement "sensible in light of the statute's plain language," id., and indicated that the Supreme Court has required this approach in other strict scrutiny contexts. Id. The Fourth Circuit stopped short of completely endorsing the requirement imposed by other circuits, but did note that "we have required that the government, consistent with the RLUIPA statutory scheme, acknowledge and give some consideration to less restrictive alternatives." Id. Despite this directive, there is no discussion in Warden Mathena's affidavit or in Defendants' brief that the current grooming policy is the least restrictive means of pursuing compelling state interests.[5]

---

[4] Bayadi presents several arguments as to why the state interests offered by Defendants are not compelling. As to the security concerns, he argues that searching a beard is just as easy as searching pockets and that photographing a beard is just as easy as photographing a clean-shaven face. ECF No. 1 at 5. As for the health and sanitation concerns, the prison commissary sells hair care products and he states he could shampoo his beard just as he shampoos his hair. Id. Female staff members wear long hair every day and he argues that long hair on his face is no more of a safety issue. Id. Finally, and perhaps most significantly, that VDOC has established the 864 Unit where the grooming policy is not enforced undermines the stated interests in security, health, and identification. ECF No. 19 at 3.

[5] Bayadi argues that the current policy is not the least restrictive means because VDOC could create another 864 Unit at ROSP. He states that ROSP and WRSP are architecturally identical and that the housing unit where he and

Because Defendants have not met their burden of persuasion, the Court denies without prejudice the Motion for Summary Judgment on Bayadi's RLUIPA claim. The Court observes, as did the court in Couch, that "this result is not inconsistent with [the] obligation to defer to the wisdom and judgment of prison officials on matters of security. In this case, the Prison Officials simply failed to provide any explanation to which this court could defer. That explanation, when it comes, will be afforded due deference." 679 F.3d at 204 (internal citations and punctuation omitted).

Couch sets a high standard for the evidence and argument required to comply with RLUIPA's strict scrutiny test. Such proof should address "the feasibility of implementing a religious exemption or discuss[] whether [the requested accommodation] implicate[s] the identified health and security concerns in the Policy." Id. at 204. The Court offers defendants an opportunity to submit such proof in support of a Second Motion for Summary Judgment, should they deem such a motion preferable to an evidentiary hearing.

## IV. REMEDIES

### A. Damages

In the Complaint, Bayadi requests injunctive relief as well as relief in the form of "filing fees & court costs & $1000." ECF No. 1 at 2. The Court must therefore determine if Bayadi may seek monetary damages on the RLUIPA claim, his only surviving claim. For the reasons set forth below, Bayadi cannot receive damages whether he is suing Defendants in their official or individual capacities.[6]

---

the other "inmates with long hair and long beards" are currently housed in ROSP is similar to the layout of the current 864 Unit at WRSP. Thus, he argues that VDOC could easily establish another 864 Unit at ROSP and accord these inmates general population privileges just as they do at WRSP. Defendants' current motion makes no response to Bayadi's argument.

[6] Defendants argue in their brief that they are entitled to qualified immunity. ECF No. 16 at 9-10. Qualified immunity, however, is an affirmative defense available only to officials sued in their individual capacities, see

9

The Supreme Court has held that state sovereign immunity bars a claim for damages under RLUIPA against a state or state officials in their official capacities. Sossamon v. Texas, 131 S. Ct. 1651, 1660 (2011) (holding that Congress did not abrogate state sovereign immunity in passing RLUIPA; therefore, damage claims against the state are barred); Edelman v. Jordan, 415 U.S. 651, 663 (1974) ("'(W)hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants.'") (quoting Ford Motor Co. v. Dep't of Treasury, 323 U.S. 459, 464 (1945)). Therefore, to the extent Bayadi seeks damages against Defendants in their official capacities, state sovereign immunity bars such relief.

State sovereign immunity does not bar suits against officials in their individual capacities. See Hafer v. Melo, 502 U.S. 21, 30-31 (1991). The Fourth Circuit, however, has held that when the jurisdictional basis for an RLUIPA suit is the Spending Clause, plaintiffs may not seek money damages against officials in their individual capacities because the statute does not furnish clear notice of a congressional intent to allow such damages. Rendelman v. Rouse, 569 F.3d 182, 189 (4th Cir. 2009). The other possible basis for federal jurisdiction is Congress's Commerce Clause authority, but there is no statement in the Complaint that Defendants' actions affected interstate commerce. Damages are thus unavailable against the Defendants in their individual capacities. See Brown v. Ray, 695 F. Supp. 2d 292, 298 (W.D. Va. 2010) (declining to consider whether damages would be available in an RLUIPA prisoner case against officials in their individual capacities under the Commerce Clause when complaint did not raise the issue).

---

Ridpath v. Bd. of Governors Marshall Univ., 447 F.3d 292, 306 (4th Cir. 2006) (citing Kentucky v. Graham, 473 U.S. 159, 165-67 (1985)), and is inapplicable when officials are sued in their official capacities. The Court determines, however, that it need not address qualified immunity or in what capacity Bayadi is suing Defendants because Bayadi cannot receive damages whether he has sued Defendants in their official or individual capacities.

The Court grants Defendants' Motion for Summary Judgment as to Bayadi's request for damages.

### B. Injunctive Relief

Neither state sovereign immunity nor qualified immunity, however, bars claims brought against officials in their official capacities seeking only prospective injunctive relief. Ex Parte Young, 209 U.S. 123, 155-56 (1908), carved out a narrow exception to the rule that states are generally immune from suit, holding that state sovereign immunity does not bar a cause of action seeking only prospective injunctive relief. 209 U.S. at 155-56.[7] Neither does qualified immunity bar prospective injunctive relief. See Meiners v. Univ. of Kansas, 359 F.3d 1222, 1233 (10th Cir. 2004) ("Qualified immunity applies to claims for monetary relief against officials in their individual capacities, but it is not a defense against claims for injunctive relief against officials in their official capacities.") (citing Frank v. Relin, 1 F.3d 1317, 1327 (2d Cir. 1993)). Bayadi may thus continue to pursue injunctive relief.

### V. CONCLUSION

Because Bayadi has only summarily asserted that Defendants violated his Equal Protection rights, the Court grants Defendants Motion for Summary Judgment as to the Equal Protection claim. The Court also grants Defendants' motion as to Bayadi's request for monetary relief under RLUIPA. Bayadi's RLUIPA claim for injunctive relief survives Defendants' motion, however, because they have not met their statutory burden of persuasion. The Court thus denies the motion as to this one claim.

The Court offers Defendants an opportunity to address the surviving RLUIPA claim in a Second Motion for Summary Judgment due 30 days from the entry of this order. In this motion,

---

[7] The rationale of Ex Parte Young is that sovereign immunity is intended to protect the states' funds from expenditure. If, however, the plaintiff seeks only injunctive relief, this rationale for immunity is not implicated.

Defendants should address whether the current OP 864.1 and the unwritten one-year segregation requirement further compelling state interests pursued by the least restrictive means, in conformity with the requirements of <u>Couch</u>. If Defendants submit their Motion for Summary Judgment, Bayadi will have 21 days in which to file his response. Defendants will then have 14 days to file a reply, should they desire.

An appropriate order shall enter this day.

ENTER: This 5th day of March, 2013.

\Hon. James C. Turk
Senior United States District Judge